## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Criminal No.14-40011-TSH** |
| | ) | |
| **NYDIA ELICIER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## UNITED STATES'S SENTENCING MEMORANDUM

**COMES NOW**, the United States of America, by and through counsel, respectfully

submits its Sentencing Memorandum for Nydia Elicier (the "defendant").  For the reasons

discussed below, the United States urges this Honorable Court to sentence the defendant to 15

months of incarceration, 12 months of supervised release, a $4,000 fine, and $400 in special

assessments.  Such a sentence falls at the bottom end of the defendant's Advisory Sentencing

Guideline Range ("GSR") and would properly address the nature and circumstances of the

offense and history and characteristics of the defendant, promote respect for the law, afford

adequate deterrence, and avoid unwanted sentencing disparities.

### I.   BACKGROUND

On April 2, 2015, following a four-day trial, a jury convicted the defendant of four counts

of aiding and assisting in the preparation of false tax returns, in violation of 21 U.S.C. § 7206(2).

The evidence at trial demonstrated that the defendant co-owned and operated a Worcester-area

tax preparation business called Cox Elicier.  The business catered mostly to an immigrant

community and its clientele were largely unsophisticated tax payers unfamiliar with U.S. tax

laws and who were unable to prepare their own income tax returns.  The defendant held herself

out as a qualified and experienced tax professional, who was authorized by the Internal Revenue

Service ("IRS") to prepare and file returns electronically for her clients.  Contrary to defendant's claims at trial and in her recent sentencing memorandum, the defendant was heavily involved with the business from its inception.  In 2004, she applied to the IRS to become an authorized E-File provider and as part of the application submitted herself to background and suitability checks, signed terms of agreement with the IRS, and identified herself as a principal of Cox Elicier Tax.

The trial testimony of the victim tax payers confirmed the defendant's involvement in the operations of the business as well as the specific actions of the defendant in preparing the false returns that were ultimately submitted to the IRS.  Each of the victim taxpayers testified that they coordinated with defendant to have their returns completed by her.  The taxpayers also detailed how they sat down with the defendant at the business while she asked them questions and entered the information into a computer equipped with tax preparation software.  At the end of their session with the defendant, each taxpayer was told by the defendant exactly the amount they would receive as refunds from the IRS.  Although some taxpayers indicated that they came back on a later day to pick up a copy of their returns, all of them stressed that the refund never varied from what the defendant told them they would receive.

During trial, the defendant claimed ignorance and attempted to blame her daughter, Jennifer Cox, for the false entries contained in the submitted returns.  The defense theory, which was specifically rejected by the jury, was that the defendant did nothing more than data entry while her daughter surreptitiously worked from a "Master Computer" altering all of the returns. The testimony of the victim taxpayers was consistent throughout the trial and specifically detailed how the defendant – not her daughter – told them what their tax refund amount would be as they sat with her.  Each and every one of these taxpayers indicated that they worked only with

the defendant and that Jennifer Cox had no involvement whatsoever in the preparation or filing of their returns.

In the end, the jury found the defendant guilty beyond a reasonable doubt of *willfully and intentionally* aiding and assisting in the preparation of false tax returns. Had the jury accepted the defendant's theory that she was nothing more than a "cog" in Jennifer Cox's master plan, such a verdict would have been impossible for them reach.

The Pre-Sentence Investigation Report prepared by the Probation Department has determined that the defendant faces an Advisory Sentencing Guideline Range of 15-21 months imprisonment based upon a Total Offense Level of 14 and Criminal History Category of I. Pre-Sentence Report dated September 4, 2015 ("PSR"), ¶ 76.

## II.     APPLICABLE LEGAL PRINCIPLES

A sentencing court is required to "consider the Guidelines 'sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant,' the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims." *United States v. Booker*, 543 U.S. 220, 260-64 (2005) (internal citations omitted). A district court may not presume that the GSR is reasonable, but must make an individualized assessment based on the facts presented. *Gall v. United States*, 552 U.S. 38, 50 (2007).

If the court determines that a sentence below the GSR is warranted, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance." *Id.* The greater the departure, the greater the justification required. *Id.* The district court's explanation must allow for appropriate appellate review and promote the perception of a fair sentencing. *Id.*

Here, the recommended sentence best represents the statutory sentencing goals set forth in 18 U.S.C. § 3553(a).  As the Supreme Court observed in *Rita v. United States*, the sentencing judge and the Sentencing Commission are carrying out "the same basic 3553(a) objectives, the one at retail, the other at wholesale."  551 U.S. 338, 348 (2007).  Put differently, the GSR serve as a "rough approximation of a sentence that might achieve § 3553(a)'s objectives."  *Id.* at 350; *Gall*, 552 U.S. at 49 ("As a matter of administration and to secure a nationwide consistency, the Guidelines should be the starting point and initial benchmark.")

## III.    ARGUMENT

### a.   The Defendant Merits The Recommended Sentence.

The recommended sentence best accomplishes the objectives set forth by Congress in § 3553(a), the most important of which with respect to the defendant are subsections (1), (2)(A), (2)(B), and (6).  Though other factors may apply, the following factors are the most significant.

> i.   *Nature and Circumstances of the Offense and History and Characteristics of the Defendant.*

Pursuant to 18 U.S.C. § 3553(a)(1), the Court must consider the nature and circumstances of the offense in selecting an appropriate sentence.  The nature and circumstances of the defendant's offense are serious and demonstrate both a detailed knowledge of the law as well as a complete disregard for it.  As the co-owner and operator of Cox Elicier Tax, the defendant blatantly defrauded the IRS by preparing and filing numerous false tax returns for customers who paid her and relied on the expertise she purported having.

Not only was the IRS a victim, but the defendant's taxpayer clients also were significantly impacted by the defendant's fraud.  As the Court will recall from testimony received during trial, most of the taxpayer victims were not wealthy people.  To the contrary, they were hardworking immigrants and first generation Americans that had to work multiple jobs

4

just to make ends meet.  It is true that as a result of the defendant's actions, these taxpayers received a larger than normal tax refund for the 2007 tax year.  However, they cannot and should not be referred to as "ultimate beneficiaries" of this fraud.  *See* Def.'s Sentencing Memorandum at 3.  At trial, many of the these victims testified that once the inaccuracies in their tax returns came to light, they were forced to pay back the extra money they received for their 2007 tax filings.  Because they did not have that kind of liquid cash on hand, these individuals had to enroll in payment plans with the IRS and incurred additional fees and penalties as a result.

The manner by which the defendant accomplished this fraud also demonstrated her knowledge of the tax code and tax filing process.  For example, with the exception of one victim taxpayer, the defendant claimed and deducted false educator expenses on behalf of her clients.  At trial, IRS Revenue Agent Joseph Guidoboni explained in detail how the educator expense deduction is taken.  As the Court will recall, to properly claim such a deduction, a person must claim the first $250 dollars for each eligible educator as an adjustment to gross income on line 23 of the Form 1040.  Any remaining educator expenses should then be claimed as standard itemized deductions in line 21 of the Schedule A.  The fact that defendant took the proper steps to claim this deduction on all but one of the victim taxpayers returns, demonstrates not only her keen understanding of the tax rules, but also the deliberate steps she took to avoid raising red flags as she violated them.

In addition to considering the nature and circumstances of the offense, the Court also must consider the Defendant's history and characteristics in imposing a sentence that is sufficient but not greater than necessary to satisfy the considerations Congress set forth in 18 U.S.C. § 3553(a).  The personal characteristics of the defendant also weigh in favor of the recommended sentence.  The defendant had been in the tax preparation for several years.  She held herself out

as a qualified and experienced tax professional.  In addition, the defendant holds a position of trust in the community as pastor of a local congregation, a fact she was not at all afraid to share with her taxpayer clients.  Several of the taxpayers even identified her as "La Pastora."  As a result, people placed their trust in her.  The fact that she committed this crime while serving in a position of trust – both as a tax preparer and pastor – further warrants the recommended sentence.

### ii.   *Promoting Respect for the Law*

The sentence this Court imposes on the defendant must "promote respect for the law [.]" 18 U.S.C. § 3553(a)(2)(A).  The Court should impose the recommended sentence to demonstrate to the defendant, and to the community, that all laws are meant to be followed and that a jury's finding of guilt should be respected.  Despite having a detailed knowledge of the tax rules and filing process, the defendant chose to disregard the law, and has yet to admit that she did anything that warrants punishment.  This sort of cavalier attitude not only demonstrates disrespect for the law and the criminal justice system, if left unpunished, promotes and encourages others to follow suit.  The defendant is not above the law and only the imposition the recommended sentence will promote respect for the law in this case.

### iii.   *Affording Adequate Deterrence*

Under 18 U.S.C. § 3553(a)(2)(B), the Court must consider both the specific and general deterrent effects of its sentence.  The defendant has argued that the charges brought against her and her daughter are a sufficient deterrent to prevent future misconduct.  *See* Def.'s Sentencing Memorandum at 6.  The United States does not contest that *the defendant* may be deterred from reoffending as a result of this case.  Such an outcome is precisely the *specific deterrent effect* we hope results from a criminal conviction.

General deterrence, however, compels the imposition of the recommended sentence.  The defendant's circumstances are not unique.  There are many tax preparation businesses similar to Cox Elicier that generate an increased customer base by promising larger returns and bending the tax rules in order to achieve them.  By sentencing the defendant as recommended by the United States, the Court would send the appropriate message to other such tax professionals that submitting false information to the IRS (with our without the knowledge of the taxpayer) is a crime that can and will result in severe penalties.  It is only once this message is understood by others in the community, that effective general deterrence can be accomplished.

<i>iv.   <u>Avoiding Unwanted Sentencing Disparities</u></i>

In fashioning an appropriate sentence, the Court should also consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  18 U.S.C § 3533(a)(6).  The defendant claims that this 3553(a) factor weighs in favor of a sentence of probation because her daughter, Jennifer Cox, was sentenced to probation for similar conduct.  *See* Def.'s Sentencing Memorandum at 6.  In reaching such a conclusion, the defendant boldly asserts that "[t]he only difference between these two individuals is that [defendant] wished to exercise her constitutional right to a trial[.]"  *Id.*  Defendant however, fails to recognize the most significant difference between her and her daughter – her *daughter's acceptance of responsibility for her acts*.  The defendant continues to maintain not only that her daughter was the culpable party, but that the worst thing she did was not having a full knowledge of the tax preparation software used by the business.  *See id.* at 5 ("[S]he did not fully grasp what was happening with these tax returns and her knowledge of the office software program utilized to complete these returns was not perfect.").

7

The fact of the matter is that Jennifer Cox and her mother, the defendant, are not similarly situated defendants. Jennifer Cox accepted responsibility for her misconduct, the defendant has not. Jennifer Cox received a three level reduction in total offense level because she recognized and admitted her illegal acts, the defendant has not. To the contrary, she is now trying to somehow ignore the jury's verdict, which found her guilty of the charged offenses and pass on the ultimate responsibility for her misdeeds to her daughter. That is a critical distinction between the two defendants, and should be considered by the Court when imposing sentence in this case.

## IV.    CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court impose a sentence of 15 months incarceration, 12 months supervised release, a $4,000 fine, and $400 in special assessments.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

Date: September 14, 2015          By:    /s/ *Jordi de Llano*
                                        Jordi de Llano
                                        Assistant United States Attorney
                                        United States Attorney's Office
                                        One Courthouse Way
                                        Boston, MA 02210
                                        617-748-3100
                                        Jordi.de.Llano.Campos@usdoj.gov

## CERTIFICATE OF SERVICE

I, Jordi de Llano, hereby certify that the foregoing was filed through the Electronic Court Filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Date: September 14, 2015                  /s/ *Jordi de Llano*
                                         Assistant United States Attorney